UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
KAHLIL O. GONZALEZ,

                    Petitioner,

        -against-

DARWIN LACLAIR, Superintendent,
Franklin Correctional Facility,

                Respondent.[1]
------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

13 Civ. 3324 (KMK)(PED)

TO THE HONORABLE KENNETH M. KARAS, United States District Judge:

## I. INTRODUCTION

On January 6, 2009, a Westchester County grand jury charged petitioner with six counts of second degree burglary (N.Y. Penal Law § 140.25), nine counts of petit larceny (N.Y. Penal Law § 155.25) and nine counts of fifth degree criminal possession of stolen property (N.Y. Penal Law § 165.40). On August 4, 2009, petitioner pled guilty to six counts of second degree burglary in full satisfaction of the indictment. He was sentenced on December 2, 2009, in accordance with his plea agreement, to six concurrent, determinate terms of imprisonment of eight and one-half years with five years post-release supervision. Petitioner is currently incarcerated at Franklin Correctional Facility in Malone, New York.

---

[1] By letter dated October 18, 2014, petitioner informed the court that he has been permanently transferred to Franklin Correctional Facility. Dkt. 37. The DOCCS inmate locator (nysdoccslookup.doccs.ny.gov) confirms this information. Thus, Darwin LaClair, Superintendent of Franklin Correctional Facility, is substituted as respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure. The Clerk of the Court shall amend the caption to reflect the substitution.

Copies mailed to pro se petitioner
Chambers of Judge Davison
12/23/14

Presently before this Court is petitioner's *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. This petition is before me pursuant to an Order of Reference dated April 5, 2012 (Dkt. #7). For the reasons set forth below, I respectfully recommend that Your Honor deny the petition in its entirety.

## II. BACKGROUND[2]

A. <u>Investigation of the Crimes and Petitioner's Arrest</u>

From March 18, 2008 through May 12, 2008, petitioner burglarized six homes in five different jurisdictions in Westchester County: 139 Ashland Avenue, Pleasantville (March 18); 60 Pinecliff Road, New Castle (April 9); 584 Pleasantville Road, Briarcliff Manor (April 21); 84 Locust Road, Mount Pleasant (April 28); 129 Old Mount Kisco Road, North Castle (May 5); and 64 Castle Road, New Castle (May 12). Petitioner stole jewelry, foreign currency and personal property worth, cumulatively, hundreds of thousands of dollars. Local police departments from each jurisdiction investigated the burglaries individually and collaboratively. Each of the victims provided police with detailed information about the property that was stolen from their homes.

In the course of the investigation, two confidential informants (who had proven reliable in the past) provided information which implicated petitioner. One informant reported seeing petitioner exit 139 Ashland Avenue with luxury watches in hand. Both informants stated that petitioner possessed property that had been stolen in multiple burglaries, much of which could be

---

[2] Unless otherwise indicated, the information within this section is gleaned from the instant petition ("Pet.") (Dkt. #2), respondent's Affidavit in Opposition to Petition for Writ of Habeas Corpus ("Resp. Aff.") (Dkt. #17), respondent's Memorandum of Law and Exhibits ("Resp. Opp.") (Dkt. #19) and petitioner's Reply and Exhibits ("Reply") (Dkt. # 21).

found inside his residence located at 72 Williams Street, Apartment 3E, Mount Vernon, New York.

On May 6, 2008, police officers investigating the Pleasantville burglary identified petitioner on a surveillance video dated March 18, 2008 (the day of the Pleasantville burglary) from an American Express Travel Agency in White Plains.  The video shows a clerk exchanging Euros for U.S. currency in the presence of petitioner and another man, Joseph Caccavale. Hundreds of dollars in Euro currency had been stolen that same day from the Ashland Avenue, Pleasantville residence; the investigating officers recognized petitioner and Caccavale from previous law enforcement encounters.

On May 14, 2008 at approximately 5:45 p.m., Pleasantville police officers (who were familiar with petitioner and his vehicle, a Jeep Cherokee) stopped petitioner as he was driving his vehicle on Broadway in Pleasantville.  A check of petitioner's license revealed it was suspended.  Detective Sergeant Stephen Bonura arrested petitioner for his suspected involvement in the Pleasantville burglary and for driving with a suspended license.  Police searched petitioner's Jeep and recovered a ring that was later identified as stolen during the April 21, 2008 burglary in Briarcliff Manor.

On May 15, 2008, police executed a search warrant for petitioner's Mount Vernon apartment and recovered multiple items of personal property.  Over the next few days, victims from the six burglaries responded to the Pleasantville police station and positively identified various items of the personal property as having been stolen from their homes.

B.  Disciplinary Charges against Detective Sergeant Stephen Bonura

On May 20, 2008, *The Journal News* published an article concerning petitioner's arrest, with the headline "Career criminal suspected in burglary spree in Westchester."  The article

included statements from the arresting officer criticizing the Westchester District Attorney's

Office's treatment of petitioner in connection with his prior arrests:

> "He's had 30 prior arrests, and he's supposed to be in jail right now still,"
> Detective Sgt. Stephen Bonura of the Pleasantville police said yesterday. "The
> last time we convicted him for a burglary was about a year and a half ago. The
> D.A.'s Office promised he would go away for like three to five years, and the
> problem is they keep giving him these plea-bargain deals because he rats
> everybody out. If they kept their word–their being the D.A.'s Office–he'd still be
> in jail right now."

Resp. Opp., Exh. N, at Exhibit D, 3.[3]  On the same day the article was published, the

Pleasantville police department suspended Bonura and initiated an internal investigation

concerning his statements to the newspaper and his May 14, 2008 arrest of petitioner.

On October 20, 2008, the Pleasantville police department levied sixty disciplinary

charges against Bonura, distilled to the following twelve grounds:

> <u>Charges 1-4</u>: Bonura had reasonable cause to arrest petitioner sooner than
> he did.

> <u>Charges 5-8</u>: Bonura failed to properly house, search and handcuff
> petitioner when he was taken in and about the Pleasantville police station.

> <u>Charges 9-12</u>: Bonura improperly subjected petitioner to a strip search and
> failed to memorialize it.

> <u>Charges 13-16</u>: Bonura failed to maintain proper custody and control of
> evidence seized from the search of petitioner's vehicle (a ring and a laptop
> computer).

> <u>Charges 17-20</u>: Bonura removed petitioner from his cell to transport him
> to a detention facility without first properly handcuffing him with both hands
> behind his back and palms facing outward.

> <u>Charges 21-24</u>: Bonura transported petitioner to a detention facility in the
> rear of an unmarked police vehicle that was not equipped with a cage.

---

[3] Hereinafter, all citations to "Exh. ___" refer to exhibits attached to respondent's
Memorandum of Law.

Charges 25-32: Bonura met with Jennifer Danzi at police headquarters to discuss petitioner's May 14, 2008 arrest; during the meeting, Ms. Danzi saw petitioner's "rap sheet."

Charges 33-36: During his meeting with Ms. Danzi, Bonura asked about her "intimate life" with petitioner and if they had sex. Bonura stated to Ms. Danzi, "if you were my daughter, I would have to beat the crap out of you" (or words to that effect). Bonura also referred to petitioner as a "career criminal," "bad boy" and "liar" (or words to that effect).

Charges 37-40: Bonura engaged in a telephone conversation with reporter Shawn Cohen of *The Journal News* regarding the May 14, 2008 arrest of petitioner, during which Bonura disclosed that the Westchester District Attorney's Office had previously given petitioner one or more plea deals in exchange for information about crimes committed by other individuals. The following statements made by Bonura to Cohen appeared in an article in *The Journal News*: "[Gonzalez] has had 30 prior arrests. Really, this is what I want in the paper. He is supposed to be in jail right now, still, because the last time we convicted him for a burglary in Pleasantville, was a year and [a] half ago. They swore he was going to get 3 to 5 years in jail. The DA's office promised that he would go away for like 3 to 5 years. And the problem is they keep giving him these plea bargain deals because he keeps ratting everyone out. So, if they had kept their word, they being the DA's office, he would still be in jail right now."

Charges 41-44: An article in *The Journal News* included the following statements made by Bonura to reporter Cohen: "[Gonzalez] has an extensive rap sheet. 12 of the 30 arrests were felonies. I think he has 3 violent felony convictions. I mean he has everything from weapons possession to menacing someone with a knife. He's got other burglary charges, just tons of stuff. Marijuana arrests, you name it, it is on there. Possession of larceny [sic] from vehicles and possession of stolen property which were years ago . . . I mean 30 arrests is a lot of arrests."

Charges 45-48: During his telephone conference with reporter Cohen, Bonura stated, in sum and substance: "[Gonzalez] started his career in crime. The first time I had him was when he was a juvenile. But you can't print that because anything that you do as a juvenile is sealed. So between the ages of 16 and 27, for 11 years, he has been on this crime wave. For the last 11 years! From 16 to 27, which is where he is now, he has been doing crimes of which all this stuff, the 30 arrests, that I am telling about [sic]. That is all between the ages of 16 and 27. That is all in the last 11 years."

Charges 49-60: Bonura provided untruthful, misleading and/or evasive statements during the Pleasantville Police Department's internal investigation of him.

Resp. Aff. at 6-8; Exh. N, at Exhibit A, 1-45.[4]

On or about December 18, 2008, the Village of Pleasantville commenced its disciplinary hearing against Bonura. The hearings continued into February 2009; the February 12, 2009 hearing was cancelled after Bonura filed for retirement, effective February 20, 2009. The Village did not pursue the hearing and no determination was ever made upon the charges filed against Bonura.

C. Petitioner's Criminal Prosecution

On May 20, 2008, petitioner was arraigned in Pleasantville Village Court on a felony complaint for second degree burglary, and pled not guilty. On July 29, 2008, during an SCI conference in Westchester County Court, the prosecution offered petitioner the opportunity to plead guilty to second degree burglary and fourth degree criminal possession of stolen property in exchange for a sentence range between seven and fifteen years and restitution judgments in favor of the victims. The court indicated that, upon petitioner's guilty plea, it would enter restitution judgments and sentence him to an aggregate term of imprisonment of seven years. On September 15, 2008, a further SCI conference was held and the matter was adjourned (at petitioner's request) to October 6, 2008 for petitioner's arraignment on the SCI pleading and his guilty plea thereto. On October 6, 2008, petitioner rejected the offer and the matter was returned to local court.

On or about December 18, 2008, evidence (including petitioner's testimony) was

_____

[4] In an article published on October 24, 2008, *The Journal News* reported that petitioner had called his counsel "to discuss news that Detective Sgt. Stephen Bonura had been brought up on a litany of departmental charges related to the officer's dealing with [petitioner] and his girlfriend," and that petitioner stated to counsel "that's fantastic, that finally the truth will come out." See Exh. N, at Exhibit D, 13-14.

presented to a Westchester County grand jury. On or about January 6, 2009, the grand jury

charged petitioner with six counts of second degree burglary (N.Y. Penal Law § 140.25), nine

counts of petit larceny (N.Y. Penal Law § 155.25) and nine counts of fifth degree criminal

possession of stolen property (N.Y. Penal Law § 165.40). On January 13, 2009, petitioner was

arraigned on the indictment and pled not guilty. Petitioner, through counsel, submitted an

omnibus motion on or about February 24, 2009; by Decision and Order entered April 15, 2009,

the trial court (Adler, J.) ordered pretrial suppression hearings and denied the remainder of the

motion. Exh. D.[5] Petitioner's case was marked ready for trial on May 21, 2009.

On July 16, 2009, petitioner appeared with counsel and indicated he would be willing to

plead guilty to second degree burglary in exchange for an aggregate term of incarceration of

seven years. The trial court (Molea, J.) responded that it would be willing to sentence petitioner

to concurrent terms of ten years imprisonment for each of the six burglaries in exchange for his

guilty plea. Petitioner rejected this offer.

On July 29, 2009, petitioner sought the following documents from the Village of

Pleasantville via a *pro se* Freedom of Information Act (FOIA) request:

> 1. The complaint against retired Detective Sergeant Stephen Bonura
> concerning the disciplinary actions that were or are pending against him, in the

---

[5] Petitioner's omnibus motion contained a general request for *Brady* material, but did not specifically seek discovery of material related to Bonura's disciplinary charges. Exh. B, at 8-12, 28-29. In its Decision and Order, the trial court stated:

> The People recognize their continuing duty to disclose exculpatory material at the earliest possible date. If the People are or become aware of any material which is arguable exculpatory [sic] but they are not willing to consent to its disclosure, they are directed to disclose such material to the Court for its *in camera* inspection and determination as to whether such will be disclosed to the defendant.

Exh. D, at 2. The remainder of the omnibus motion is irrelevant to the issues presented for habeas review.

Village of Pleasantville.

2.  The transcript of his telephone conversation with *The Journal News* reporter Shawn Cohen on Monday May 19, 2008.

3.  Any documentation regarding his internal investigation conducted by the Village of Pleasantville Police Department.

4.  The transcript of any internal investigation interviews conducted by Pleasantville Police lt. Wilson, and Lt. Love, with Stephen Bonura.

5.  A list of all charges or acts of misconduct against Stephen Bonura.

Exh. F.[6]

D.  Petitioner's Guilty Plea

On August 4, 2009, petitioner appeared with counsel in Westchester County Court (Neary, J.).  Defense counsel stated that the case had been conferenced "several times," that he had the opportunity to speak with petitioner "several times" and conveyed to him the court's most recent offer, in exchange for petitioner's guilty plea, of six concurrent determinate sentences of eight and a half years in full satisfaction of the indictment.  Exh. G, at 2.  Counsel further stated:

> Mr. Gonzalez is not rejecting that offer but because he didn't expect to come to Court today–and this was kind of just, this was just put together late yesterday afternoon, he wanted to know if Your Honor would consider giving him a few days to consider the offer and consult with his family and then come back and make a final decision?

Id. at 2-3.  The court responded:

> I'm not inclined to do that.  I'm making that available today and today only, if Mr. Gonzalez wants to take advantage.

_____

[6] By letter dated September 11, 2009, the Village denied petitioner's document requests #3 and #4 as privileged and/or exempt, but agreed to provide the remaining requested documents (including a list of all disciplinary charges against Bonura) upon receipt of $18.25 to cover copying costs.  See Exh. J.  Petitioner was advised, in the alternative, that the documents the Village agreed to produce could be inspected at no charge at the Pleasantville Village Hall.  Id.

> When I view Mr. Gonzalez'[s] record in all candor, he doesn't appear to me to be the type of individual who needs much time to decide whether it is an adequate offer or an offer that he thinks that he can live with.
>
> His exposure is immense on the other hand, if he goes to trial and gets convicted.  I have no difficult giving consecutive.
>
> He [has] been around a significant amount of time.  Not as long as I have been.  He is [an] individual who know a great deal.
>
> If he thinks he's not getting a good deal, but I think the Court is extending itself, I understand other judges were talking double figures, I am inclined to move the case for his sake, the D.A.'s case, but it's on the table today, an offer of eight and a half years for this multi-count C violent felony indictment.
>
> So if he is inclined to take it, take it today.  I'm not trying to put any pressure on you to do it.
>
> I just don't want to be taken advantage of by a defendant who thinks the tail can wag the dog.  If he wants to take the offer, fine.  If not, fine, we'll schedule it for trial and he is certainly entitled to his day in court.

Id. at 3-4.  After consulting with counsel, petitioner acknowledged the plea offer was "good" and stated he did not want to reject it, but he needed one week to speak to his family about it because he had not expected to come to court and was not prepared.  Id. at 5.  The court responded:

> I can't do it only because when we look at your record, I think you're the type of individual who plays people and I don't want to be added to your list of people you've played.
>
> I know you know it is a good deal.
>
> It is the best deal you're going to get.  So why, if you agree with me, and you may not, I think you understand that this is a good deal.
>
> But for me to keep it open, I'm not inclined to do that.  There comes a time when you have to face the music.  Your have to say . . . they got me.
>
> This case has been going on for a long time.  If you think one of you better options is to dispose of the case by a plea, this is time to do it.
>
> If you don't, I understand that, and we'll be happy to try the case.  You may prevail.  You have a very good attorney.  I'm not downplaying it.

Id. at 5-6.

Petitioner then voiced concerns about his placement in the prison system and safety while incarcerated "due to certain exposure [he had] in the media."  Id. at 7.  After consulting with defense counsel and receiving assurances from the court and the prosecution that they would do all they could to insure his safety, petitioner accepted the plea offer and expressed his desire to plead guilty to six counts of second degree burglary in full satisfaction of the indictment.  Id. at

7-11.

Petitioner was placed under oath.  Id. at 12.  He acknowledged his intent to plead guilty to six counts of second degree burglary and that he had enough time to discuss his decision with his attorney.  Id. at 12-13.  He affirmed that his understanding of the plea proceeding was not impaired by any substance and acknowledged that, by pleading guilty, he was waiving his constitutional rights.  Id. at 13-14.  Petitioner stated he was entering his guilty plea freely and voluntarily, and that no one had threatened, coerced or forced him to plead guilty.  Id. at 14-15.

Petitioner was then asked whether he was pleading guilty because he was, in fact, guilty; he responded as follows:

A.  Am I pleading because I am in fact guilty?

Q.  Yes.

A.  If I say no, does it take?

Q.  Are you guilty?

[DEFENSE COUNSEL]:  May I have a moment, please.

THE COURT:  Why don't you discuss that with your attorney for a moment?  This is kind of an important question. (Whereupon Mr. Rich confers with the defendant off the record.)

A.  Yes.

THE COURT:  Mr. Gonzalez, you understand I'm not looking for somebody to plead guilty, if they are not guilty.  That's the last thing I want you to do.  You have a very good attorney.

THE DEFENDANT:  I understand that, Your Honor.  I'm also aware of the allegations made against me and whether I'm guilty or not, that's not going to change.

Mr. Rich:  May I have a moment.

THE COURT:  Yes. (Whereupon Mr. Rich confers with the defendant off

the record.)

      Mr. Rich:  Thank you, Judge.

      THE COURT:  If you have a problem pleading guilty, don't plead guilty. I'm not kidding about that.  That's the crux of this whole thing.

      THE DEFENDANT:  I have a problem risking my life.

      THE COURT:  Your exposure at trial, if you are found guilty – you know, I'm not interested in getting a plea of guilty from someone who is not guilty.  Do you admit you're guilty of these burglaries?

      THE DEFENDANT:  Yes.

Id. at 15-16.

Petitioner was again asked if he was pleading guilty because he was, in fact, guilty; he answered "Yes."  Id. at 16-17.  The prosecutor asked petitioner whether he understood that restitution would be required as a condition of the plea bargain; after petitioner inquired as to the specific amount of restitution, the court declared a recess to allow the People an opportunity to confirm the figure.  Id. at 17-20.  When court resumed, the prosecutor stated that no restitution would be required as a condition of the plea.  Id. at 20.  Rather than continuing with petitioner's allocution, the Court decided to "start at the beginning and go through it from the beginning." Id.  Accordingly, petitioner allocuted (in pertinent part) as follows (id. at 23-36):

Q.  Mr. Gonzalez, you understand, you are still under oath from this morning?

A.  Yes, ma'am.

. . .

Q.  Is this . . . your application to plead guilty to each one of those burglaries [six counts of burglary in the second degree]?

A.  Yes.

Q.  How old are you, sir?

-11-

A.  29 years old.

Q.  Do you understand that you have an absolute right to remain silent in the fact of the charges against you, and that by entering this plea of guilty, you're giving up that right and incriminating yourself?

A.  Yes.

Q.  Have you had enough time to discuss this matter with your attorney and to arrive at a decision to plead guilty?

A.  I have.

Q.  Have you consumed any alcoholic beverage, any medication of any other drugs today which would impair your understanding of these proceedings?

A.  Absolutely not.

Q.  Do you understand that with respect to these charges, you have the right to a jury trial, or to a nonjury trial with the Court, that would be Judge Neary in this case, sitting as the trier of fact?

A.  Yes.

Q.  Do you understand that at that trial, the People would have to prove every element of a crime beyond a reasonable doubt to secure a conviction fo that crime?

A.  Yes, I understand.

Q.  Do you understand that tat that trial you would have the right to confront and cross examine the People's witnesses, if you choose to do that?

A.  Yes.

Q.  Do you understand that at such a trial you would have the right to present witnesses and to testify in your own behalf, if you choose to do any of those things?

A.  Yes.

Q.  Do you understand that by this plead of guilty, you waive, that means you give up these and other constitutional rights?

A.  Yes.

Q.  Do you understand that your plea of guilty is a conviction just the same as if you had gone to trial and been found guilty of six counts of burglary in the second degree; having to do with six different incidents?

A.  I understand.

Q.  Has anyone threatened, coerced or forced you in any way to plead guilty?

A.  No.

Q.  Are you entering this plea of guilty freely and voluntarily?

A.  Yes.

Q.  Are you pleading guilty because you are in fact guilty?

A.  Yes.

Q.  Do you understand that you're pleading guilty to six class C violent felong offenses for which the maximum sentence on each is 15 years in state prison?

A.  Yes.

Q.  Do you understand that if you are again convicted of a felony, your conviction today here may subject you to a greater sentence, a greater sentence than if you had not been convicted?

A.  Yes.

Q.  The Court has had a conference with the People and with your counsel, Your Honor, would you like to put that on the record?

　　THE COURT:  As I indicated to you earlier, my promise is eight and a half years state prison.  I have to impose a five-year post release supervision by law. . . .

　　　　. . .

　　THE DEFENDANT:  I just wanted to put on the record since this second call, that you will consider certain applications for my safety regarding to certain matters.

　　THE COURT:  Yes, to the extent that I can put anything on the order of the commitment and all of that, I will be happy to do it and talk to the Correction Department, if necessary.  All right?

THE DEFENDANT:  Thank you, Judge.

Q.  Other than the sentence commitment which the Court has just indicated to you, has anyone made any other promises or representations to you with respect to this plea of guilty?

A.  No.

Q.  Do you understand the Court's promise?

A.  Yes.

. . .

Q.  Do you understand that you will be sentenced in this case as a second violent felony offender?

A.  Yes, I do.

Q.  Do you understand as a condition of this plea, you are waiving the right to appeal your conviction and sentence to the Appellate Division Second Department?

A.  I do.

Q.  Have you discussed this waiver of the right to appeal with your attorney?

A.  Basically, yes.

MR RICH:  One second.  (Whereupon, Mr. Rich confers with the defendant.)

Q.  Have you discussed the waiver of the right to appeal with your attorney?

A.  Yes.

Q.  In consideration of this negotiated plea, do you now voluntarily waive your right to appeal you conviction and sentence under this indictment?

A.  I do.

. . .

Q.  Do you now plead guilty to the crimes as charge in court 1, 2, 3, 4, 5, and 6, six separate burglary in the second degree crimes under Indictment 08-0784?

-14-

A.  Yes.

Q.  In doing so, do you admit, and is it true that [on] or about March 18, 2008, at about and between the approximate hours of 10 o'clock in the morning, and 6:36 p.m., that you did knowingly enter unlawfully into a house located at 139 Ashland Avenue, in the Village of Pleasantville, . . . with the intent to commit a crime therein?

A.  Yes.

Q.  And do you admit under count two, that on or about April 9, 2008, at and between, the approximate hours of 11:00 o'clock in the morning, and 3:15 p.m., you did knowingly enter unlawfully in a house located at 60 Pine Cliff Road in the Town of New Castle with the intent to commit a larceny therein?

A.  Yes.

Q.  And under count three, do you admit on or about April 21, 2008 at about and between the hours of 8:00 a.m. and 5:15 p.m., you did knowingly enter unlawfully into a house located at 584 Pleasantville Road, in the Village of Briarcliff Manor, . . . with the intent to commit a larceny therein?

A.  Yes.

Q.  Under count four, do you admit that on or about April 28, 2008, at about and between the [ap]proximate hours of 8:00 a.m. and 5:10 p.m., you did knowingly enter unlawfully into a house located at 84 Locust Road in the town of Mount Pleasant, . . . with the intent to commit a larceny therein?

A.  Yes.

Q.  And under count five, do you admit that on or about May 5th, 2008, at about and between the approximate hours of 8:30 in the morning and 6:10 p.m., you did knowingly enter unlawfully into a house located at 129 Old Mount Kisco Road, in the town of North Castle, . . . with the intent to commit a crime therein?

A.  Yes.

Q.  Under count six, do you admit that on or about May 12, 2008 at about and between the approximate hours of 7:30 a.m. and 3:30 p.m. you did knowingly enter unlawfully into a house located at 64 Castle Road (phonetic) in the Town of New Castle, . . . with the intent to commit a larceny therein?

A.  Yes.

Q.  Do you understand everything that has been said here today, Mr. Gonzalez?

A.  I do.

Q.  Do you have any questions of myself, the Court or of your attorney?

A.  Not at this time.

[The People recommend that the Court accept petitioner's guilty plea.]

THE COURT:  Mr. Gonzalez, is that what you want me to do, is to accept the plea today?

THE DEFENDANT:  Yes, sir.

. . .

THE COURT:  You're comfortable with the decisions you made today?

THE DEFENDANT:  Yes.

THE COURT:  I just want it on the record.  If there is a good legal reason for you to withdraw the plea, I will let you withdraw the plea.  But the things I said are not good legal reasons, if I find that the plea is freely and knowingly and voluntarily entered into.  I saw the way you conducted yourself in Court.  You seemed reasonable and understanding of the whole process.  The plea is accepted by the Court.

E.  Direct Appeal

Petitioner timely filed a *pro se* notice of appeal on December 24, 2009.  On or about February 11, 2011, petitioner (by and through counsel) appealed the judgment of conviction to the Appellate Division, Second Department, on the ground that his guilty plea should be set aside because it was not knowing, voluntary and intelligent.  See Reply, Exh. B.  Specifically, petitioner argued that the disciplinary charges against Bonura reflected a "specter of wrongdoing by law enforcement" which undermined the validity of petitioner's arrest and compelled him to accept a plea deal "because a police officer was out to get him."  Id.  On April 4, 2011, the Second Department granted the prosecution's motion to strike petitioner's appellate brief and

-16-

directed petitioner to "serve and file a replacement brief that does not contain exhibits or refer to matter dehors the record." Reply, Exh. E.

On or about April 25, 2011, petitioner's appellate counsel filed an *Anders* brief[7] requesting to be relieved as attorney of record in light of the absence of non-frivolous issues. See Exh. L at 1-56. By letter dated April 25, 2011, counsel sent petitioner a copy of the *Anders* brief and transcripts, notified him of his right to file a *pro se* supplemental brief and provided instructions on how to do so. Id. at 71. Petitioner did not file a supplemental brief. On July 5, 2011, the Second Department stated "[w]e have reviewed the record and agree with the defendant's assigned counsel that there are no nonfrivolous issues which could be raised on appeal" and, thus, affirmed petitioner's judgment of conviction. People v. Gonzalez, 86 A.D.3d 543, 926 N.Y.S.2d 322 (2d Dep't 2011).

F. State Court Collateral Proceeding

On or about November 4, 2011, petitioner filed a *pro se* motion to vacate his judgment of conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10. See Exh. N. Petitioner therein argued that his guilty plea should be vacated because (1) it was procured by duress, misrepresentation and fraud due to the prosecution's withholding of information concerning the departmental charges filed against Bonura (which petitioner characterized as a *Brady* violation)[8] and (2) it was coerced by the trial court's statements and refusal to grant an adjournment. See id; see also Exh. P. By Decision and Order dated August 30, 2012, the County Court, Westchester County (Hubert, J.) denied petitioner's motion on the grounds that

---

[7] See Anders v. California, 386 U.S. 738 (1967).
[8] Brady v. Maryland, 373 U.S. 83, 87 (1963). "A *Brady* violation occurs when the government fails to disclose evidence materially favorable to the accused." Youngblood v. West Virginia, 547 U.S. 867, 869 (2006).

(1) petitioner's record-based claims were procedurally barred pursuant to CPL 440.10(2)(c)[9] and

(2) all of petitioner's arguments lacked merit.  See Exh. Q.

On or about July 16, 2012, prior to the County Court's Decision and Order denying his

motion to vacate, petitioner filed a motion seeking leave to appeal to the Second Department

based upon the lack of a decision from the lower court.  See Exh. R.  After the lower court issued

its decision, petitioner filed a "Supplemental Addendum" to his pending leave application,

seeking leave to appeal the lower court's denial of his motion to vacate.  See Exh. S.  By

Decision and Order on Application dated October 17, 2012, the Second Department denied

petitioner leave to appeal.  Exh. V.  On November 5, 2012, the Second Department denied

petitioner's motion for reargument.  Exh. Y.  On or about November 5, 2012, petitioner sought

leave to appeal the Second Department's denial of leave to appeal, and the County Court's denial

of his motion to vacate, to the Court of Appeals.  Reply, Exh. A.  On January 15, 2013, the Court

of Appeals dismissed petitioner's application "because the order sought to be appealed from is

not appealable under CPL 450.90(1).  People v. Gonzalez, 20 N.Y.3d 1011, 984 N.E.2d 329, 960

N.Y.S.2d 354 (2013) (Table).  On March 13, 2013, the Court of Appeals denied petitioner's

motion for reconsideration.  People v. Gonzalez, 20 N.Y.3d 1099, 988 N.E.2d 533, 965 N.Y.S.2d

795 (2013) (Table).

---

[9]  "[T]he court must deny a motion to vacate a judgment when . . . [a]lthough sufficient
facts appear on the record of the proceedings underlying the judgment to have permitted, upon
appeal from such judgment, adequate review of the ground or issue raised upon the motion, no
such appellate review or determination occurred owing to the defendant's unjustifiable failure to
take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such
ground or issue upon an appeal actually perfected by him."  N.Y. Crim. Proc. Law §
440.10(2)(c).

G.  The Instant Habeas Petition

Petitioner timely[10] filed the instant Petition for a Writ of Habeas Corpus on or about April 24, 2013,[11] wherein he seeks habeas review of the following claims:

> (1)  The Second Department's denial of leave to appeal from the County Court's denial of petitioner's motion to vacate deprived him of due process;
> (2)  Petitioner's guilty plea was not knowing, intelligent or voluntary because the trial judge's statements "permeated the proceeding with bias, duress and coercion;"
>
> (3)  The People's failure to disclose exculpatory information (prior to petitioner's guilty plea) concerning the internal investigation of, and disciplinary charges brought against, Bonura deprived petitioner of due process, equal protection and a fair trial;
>
> (4)  The People's failure to disclose exculpatory information (prior to petitioner's guilty plea) concerning the credibility, criminal involvement and conflict of interest of the key informant who provided information leading to petitioner's arrest deprived petitioner of due process, equal protection and a fair trial;
>
> (5)  Petitioner was deprived of due process because the police misconduct "caused a snowball effect which initiated further prosecutorial misconduct and pervaded the entire proceeding with blatant prejudice."

Petition, at 6-21.

## III.  APPLICABLE LAW

"Habeas review is an extraordinary remedy." Bousley v. United States, 523 U.S. 614, 621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).  Before a federal district court may review the merits of a state criminal judgment in a habeas corpus action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28

---

[10]  See 28 U.S.C. § 2244(d)(1).

[11]  The date on which petitioner placed the instant Petition in the prison mailing system. See Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001) (extending the "mailbox rule," Houston v. Lack, 487 U.S. 266 (1988), to *pro se* petitions for habeas relief).

U.S.C. §§ 2244 and 2254.  If there has been procedural compliance with these statutes, the court

must then determine the appropriate standard of review applicable to the petitioner's claim(s) in

accordance with  § 2254(d).  The procedural and substantive standards applicable to habeas

review, which were substantially modified by the Anti-Terrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), are summarized below.

A.  Timeliness

The AEDPA established a one-year statute of limitations for the filing of a habeas corpus

petition seeking relief from a state court conviction.  See 28 U.S.C. § 2244(d)(1).  The one-year

limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of
> direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by
> State action in violation of the Constitution or laws of the United States is
> removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially
> recognized by the Supreme Court, if the right has been newly recognized by the
> Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims
> presented could have been discovered through the exercise of due diligence.

Id.

The AEDPA's statute of limitations is tolled during the pendency of a properly filed

application for state post-conviction relief, or other collateral review, of a claim raised in the

petition.  See id. § 2244(d)(2).  The one-year limitation period is also subject to equitable tolling,

which is warranted when a petitioner has shown "'(1) that he has been pursuing his rights

diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely

filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S.

408, 418 (2005)).  "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period."  Harper v. Ercole, 648 F.3d 132, 137 (2d Cir. 2011).  "To secure equitable tolling, it is not enough for a party to show that he experienced extraordinary circumstances.  He must further demonstrate that those circumstances caused him to miss the original filing deadline."  Id.  Additionally, "[c]onsistent with the maxim that equity aids the vigilant, a petitioner seeking equitable tolling of AEDPA's limitations period must demonstrate that he acted with reasonable diligence throughout the period he seeks to toll."  Id. at 138 (internal quotation marks and citations omitted); see also Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (A petitioner seeking equitable tolling must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances.").

B.  Procedural Default

Federal habeas corpus review of a state court's denial of a state prisoner's federal constitutional claim is barred if the state court's decision rests on an independent and adequate state procedural ground, unless the petitioner can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional violation, or that he is actually innocent.  See Bousley, 523 U.S. at 622; Coleman v. Thompson, 501 U.S. 722, 750 (1991).  See also Lee v. Kemna, 534 U.S. 362, 375 (2002); Dunham v. Travis, 313 F.3d 724, 729 (2d Cir. 2002).  A procedural ground is "independent" if "the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar."  See Harris, 489 U.S. at 263 (internal quotation marks omitted).  A procedural bar is "adequate" if it is

"based on a rule that is firmly established and regularly followed by the state in question."

Monroe v. Kuhlman, 433 F.3d 236, 241 (2d Cir. 2006) (internal quotation and citation omitted).

In certain limited circumstances, however, "even firmly established and regularly followed state rules will not foreclose review of a federal claim if the application of the rule in a particular case is 'exorbitant.'"  See Garvey v. Duncan, 485 F.3d 709, 713-14 (2d Cir. 2007) (citing Lee, 534 U.S. at 376).  To this end, the Second Circuit has set forth the following "guideposts" for evaluating the adequacy of the state procedural bar in the context of "the specific circumstances presented in the case, an inquiry that includes an evaluation of the asserted state interest in applying the procedural rule in such circumstances":

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003) (quoting Lee, 534 U.S. at 381-85).

C.  Exhaustion

A federal court may not grant habeas relief unless the petitioner has first exhausted his claims in state court.  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see 28 U.S.C. § 2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant"); id. § 2254(c) (the petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right

under the law of the State to raise, by any available procedure, the question presented").  The

exhaustion requirement promotes interests in comity and federalism by demanding that state

courts have the first opportunity to decide a petitioner's claims.  Rose v. Lundy, 455 U.S. 509,

518-19 (1982).

 To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each

appropriate state court (including a state supreme court with powers of discretionary review),

thereby alerting that court to the federal nature of the claim," and thus "giving the State the

opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  Baldwin

v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted).  "Because

non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas

petition must put state courts on notice that they are to decide federal constitutional claims."

Petrucelli v. Coombe, 735 F.2d 684, 687 (2d Cir. 1984) (citing Smith v. Phillips, 455 U.S. 209,

221 (1982)).  Such notice requires that the petitioner "apprise the highest state court of both the

factual and legal premises of the federal claims ultimately asserted in the habeas petition."

Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation omitted).  In doing so, a

petitioner need not cite chapter and verse of the Constitution; there are a number of other ways in

which a petitioner may fairly apprise the state court of the constitutional nature of his claim,

including: "a) reliance on pertinent federal cases employing constitutional analysis, b) reliance

on state cases employing constitutional analysis in like fact situations, c) assertion of the claim in

terms so particular as to call to mind a specific right protected by the Constitution, and d)

allegation of a pattern of facts that is well within the mainstream of constitutional litigation."

Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011).  A habeas petitioner who fails to meet a

state's requirements to exhaust a claim will be barred from asserting that claim in federal court.

Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

However, "[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation omitted). "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991). Such a procedurally barred claim may be deemed exhausted by a federal habeas court. See, e.g., Reyes, 118 F.3d at 139. However, absent a showing of either "cause for the procedural default and prejudice attributable thereto," Harris v. Reed, 489 U.S. 255, 262 (1989), or "actual innocence," Schlup v. Delo, 513 U.S. 298 (1995), the petitioner's claim will remain unreviewable by a federal court.

When confronted with a "mixed" petition containing both exhausted and unexhausted claims, a federal court has the following options: (1) it may stay the proceedings and hold the petition in abeyance in order to permit the petitioner to return to state court and exhaust the unexhausted claim(s); (2) it may permit the petitioner to amend the petition and excise any unexhausted claim; (3) it may dismiss without prejudice the entire petition; or (4) it may review and deny a mixed petition containing both exhausted and unexhausted claims, if those unexhausted claims are "plainly meritless." See 28 U.S.C. § 2254(b)(2); Rhines v. Weber, 544 U.S. 269, 277-78 (2005); Zarvela v. Artuz, 254 F.3d 374, 378-82 (2d Cir. 2001); Reyes v. Morrissey, No. 07 Civ. 2539, 2010 WL 2034531, at *9 (S.D.N.Y. Apr. 21, 2010) (Report and Recommendation), adopted by 2010 WL 2034527 (S.D.N.Y. May 19, 2010).[12]

––––––––––––––––––––––––

[12] Copies of all unpublished cases available only in electronic form cited herein have been mailed to petitioner. See Lebron v. Sanders, 557 F.3d 76, 78 (2d Cir. 2009).

D. <u>Standard of Review</u>

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." <u>Estelle v. McGuire</u>, 502 U.S. 62, 68 (1991).  <u>See</u> 28 U.S.C. § 2254(a).  When reviewing petitions filed subsequent to the AEDPA's effective date, a federal court may not grant habeas relief unless the petitioner establishes that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1), (d)(2).  The AEDPA deferential standard of review will be triggered if the petitioner's claim "was adjudicated on the merits in State court proceedings."  28 U.S.C. § 2254(d); <u>see</u> <u>Bell v. Miller</u>, 500 F.3d 149, 154-55 (2d Cir. 2007).  "For the purposes of AEDPA deference, a state court 'adjudicate[s]' a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment."  <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 312 (2d Cir. 2001).

A state court's decision is "contrary to" clearly established Federal law if (1) "the state court applies a rule that contradicts the governing law set forth [by the Supreme Court of the United States]" or (2) "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000).  "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [Supreme Court] decisions.  And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even 'clear error' will not suffice." <u>White</u>

-25-

v. Woodall, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted).  "The critical point is that relief is available under § 2254(d)(1)'s unreasonable application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question."  Id. at 1706-07 (quoting Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011)) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

Finally, under the AEDPA, the factual findings of state courts are presumed to be correct. See 28 U.S.C. §2254(e)(1); see also Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997).  The petitioner must rebut this presumption by "clear and convincing evidence."  28 U.S.C. §2254(e)(1).

## IV.  ANALYSIS

A.  Procedurally Barred Claim (Claim Two)

In his second claim for habeas relief, petitioner alleges that his guilty plea was coerced by the trial judge's statements and refusal to adjourn the proceeding.  Petitioner presented this claim to the County Court in his CPL 440.10 motion to vacate; the County Court rejected the claim on procedural grounds (pursuant to CPL 440.10(2)(c) and, alternatively, on its merits. Exh. Q, at 2-3.  Where a state court has expressly relied on a procedural default, federal habeas review is foreclosed even if the state court also addressed the merits of the federal claim.  See Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) (federal habeas review barred where state court held claim "not preserved for appellate review" but then ruled on the merits of the claim "in any event").

-26-

A state court's rejection of a motion to vacate pursuant to CPL § 440.10(2)(c) constitutes an independent and adequate state procedural bar to habeas review.  See Clark v. Perez, 510 F.3d 382, 393 (2d Cir. 2008) (finding "district court erred in holding that the state court's application of section 440.10(2)(c) did not constitute an adequate state procedural bar to [petitioner's] federal habeas petition"); Aparicio v. Artuz, 269 F.3d 78, 93 (2d Cir. 2001) ("[T]here can be no doubt" that the state court's rejection of petitioner's claim pursuant to 440.10(2)(c) rested on an adequate and independent state bar).  Further, the County Court's application of CPL 440.10(2)(c) in this case was not exorbitant.  As to the first *Cotto* consideration, "it is readily apparent from the face of the state court's opinion that the court explicitly relied on § 440.10(2)(c) in denying" petitioner's claim that the trial judge coerced his guilty plea.  Beaman v. Yelich, No. 12 Civ. 5304, 2014 WL 1813926, at *9 (S.D.N.Y. May 6, 2014).[13]  The second *Cotto* consideration clearly weighs against petitioner because "New York courts consistently require compliance with § 440.10(2)(c) where, as here, the movant has failed to raise on direct appeal record-based claims that he has raised in a motion to vacate pursuant to C.P.L. § 440.10."  Garcia v. Lee, 10 Civ. 5287, 2012 WL 3822137, at *20 (S.D.N.Y. Aug. 28, 2012) (collecting New York state cases).  The third *Cotto* consideration similarly disfavors petitioner because he did not comply with CPL 440.10(2)(c), and requiring perfect compliance serves the legitimate governmental interest in preventing CPL 440.10 "from being employed as a substitute for direct appeal when the defendant was in a position to raise an issue on appeal . . . or could readily have raised it on appeal but failed to do so."  Sweet v. Bennett, 353 F.3d 135, 139 (2d Cir. 2003) (quotation and citation omitted).

―――――――――――――――――

[13]  Copies of all unpublished cases available only in electronic form cited herein have been mailed to petitioner.  See Lebron v. Sanders, 557 F.3d 76, 78 (2d Cir. 2009).

Because there is an adequate and independent finding by the County Court that petitioner procedurally defaulted on the record-based challenge to the sufficiency of his guilty plea he now asserts as grounds for habeas relief, petitioner must demonstrate in his habeas petition "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." See Coleman, 501 U.S. at 750. Petitioner, however, has made no attempt to show cause or prejudice, and there is no indication that this Court's failure to address the merits of the unpreserved claims would result in a fundamental miscarriage of justice. Accordingly, I conclude, and respectfully recommend, that petitioner's procedural default bars federal review of his second claim for habeas relief.[14]

B.  Exhausted Claims (Claims One and Three)

Petitioner alleges, in his first claim for habeas relief, that the Second Department's denial of leave to appeal from the County Court's denial of petitioner's motion to vacate deprived him of due process. As the basis for his third habeas claim, petitioner alleges that the prosecution's failure to disclose exculpatory information (prior to petitioner's guilty plea) concerning the internal investigation of, and disciplinary charges brought against, Bonura deprived petitioner of due process, equal protection and a fair trial. Petitioner has properly exhausted both of these claims. Accordingly, I will address the merits of both claims.

1.  Claim One

"The Federal Constitution imposes on the States no obligation to provide appellate

---

[14] Dismissal of a claim for habeas relief on the ground of procedural default amounts to "a disposition of the habeas claim on the merits." See Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011).

review of criminal convictions." Halbert v. Michigan, 545 U.S. 605, 610 (2005).  Nonetheless, New York law provides that a defendant may appeal the denial of a C.P.L. § 440.10 motion to vacate the judgment "provided that a certificate granting leave to appeal is issued pursuant to [C.P.L. §] 460.15."  N.Y. Crim. Proc. Law § 450.15.  Therefore, although New York law affords petitioner the opportunity to seek an appeal from a denial of a motion to vacate, whether the appeal will be heard is purely discretionary.  In other words, petitioner had no right to have his appeal heard by the Second Department; the appellate division's denial of leave to appeal did not deprive petitioner of due process.  Accordingly, I conclude and respectfully recommend that petitioner's first claim provides no basis for habeas relief.

   *2. Claim Three*

   Petitioner claims he is entitled to relief from his guilty plea because the prosecution's withholding of "exculpatory" information concerning the disciplinary charges brought against Bonura constitutes a *Brady* violation.  As an initial observation, it is far from clear that the information to which petitioner refers was indeed "exculpatory" or otherwise constituted *Brady* material.[15]  Even assuming it was exculpatory, petitioner's claim is misplaced.  The Supreme Court has held that "the Constitution does not require the Government to disclose material *impeachment* evidence prior to entering a plea agreement with a criminal defendant."  United States v. Ruiz, 536 U.S. 622, 633 (2002) (emphasis added).  Although no court has expressly resolved the issue of whether *Ruiz* extends to exculpatory material, "the Supreme Court has consistently treated exculpatory and impeachment evidence in the same way for the purpose of

_____

   [15]  Additionally, as evidenced by the October 24, 2008 *Journal News* article (Exh. N at Exhibit D, 13-14) and petitioner's July 29, 2009 FOIA request (Exh. F), petitioner was aware prior to his guilty plea that disciplinary charges had been filed against Bonura stemming from his May 14, 2008 arrest of petitioner.

defining the obligation of a prosecutor to provide *Brady* material prior to trial, and the reasoning underlying *Ruiz* could support a similar ruling for a prosecutor's obligations prior to a guilty plea." Friedman v. Rehal, 618 F.3d 142, 154 (2d Cir. 2010) (internal citations omitted).  In any event,

> the Supreme Court has never held that exculpatory material (as opposed to impeachment material) must be disclosed prior to a guilty plea.  Therefore, a state court decision on that issue could not have been "contrary to clearly established federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  A habeas petition may not be granted on an issue of law that has not yet been resolved.

Powell v. Graham, No. 10-CV-1961, 2013 WL 37565, at 15 (E.D.N.Y. Jan. 3, 2013).  Thus, petitioner's contention that, at the time of his guilty plea, he was unaware of exculpatory information that had been withheld by the prosecution is not cognizable on habeas review. Accordingly, I conclude and respectfully recommend that petitioner's third claim must be dismissed.

C.  Unexhausted Claims (Claims Four and Five)

Petitioner alleges, in his fourth claim for habeas relief, that his due process and equal protection rights and his right to a fair trial were violated by the People's failure to disclose exculpatory information concerning the credibility, criminal involvement and conflict of interest of the key informant who provided information leading to petitioner's arrest (the "informant *Brady* claim").  As his fifth ground for habeas relief, petitioner claims that he was deprived of due process because police and prosecutorial misconduct permeated his guilty plea proceeding. Petitioner raised neither claim on direct appeal, but argues that both claims are exhausted because they were raised in his CPL 440.10 motion to vacate.  Specifically, petitioner argues that he raised his fourth habeas claim (the informant *Brady* claim) in his CPL 440.10 motion via the

following sentences:

> "Failure to disclose Brady material violated my basic constitutional rights to due process.  In this particular case, Bonura was the linchpin holding the case together.  He had control of the evidence, he signed off on the complaints, and he was the official who interviewed and obtained the statement from the main witness who was the obvious perpetrator, who also had a long history with Bonura and myself."

Reply at 8; Exh. N at 17-18.  These sentences are contained within petitioner's arguments regarding the prosecution's failure to disclose Bonura's disciplinary charges and related information (the "Bonura *Brady* claim").  Exh. N at 17-18.  This brief, out of context reference to the "main witness" is clearly insufficient to alert the state court to a separate, distinct *Brady* claim related to the informant.  Petitioner also vaguely asserts that he raised his fifth habeas claim (police and prosecutorial misconduct) in his CPL 440.10 motion.  Reply, at 10.  The sections cited by petitioner in support of this argument concern only his Bonura *Brady* claim and, thus, are insufficient to alert the state court to a distinct claim regarding police and prosecutorial misconduct.  Petitioner also argues, however, (1) that his fourth claim is exhausted because he raised it in his CPL 440.10 Reply Affidavit and leave applications to the Second Department and Court of Appeals, and (2) his fifth claim is exhausted because he raised it in his leave applications to the Second Department and Court of Appeals.  Reply, at 8-11.  I will address these arguments in reverse order.

    *1.  Claim Five*

    "Presenting a claim for the first time to a state court of discretionary review is insufficient to exhaust the claim unless the court considers it."  Lurie v. Wittner, 228 F.3d 113, 124 (2d Cir. 2000).  Thus, because neither the Second Department nor the Court of Appeals considered petitioner's claim regarding police and prosecutorial misconduct, petitioner's fifth

habeas claim is unexhausted.  Further, this claim may not be "deemed" exhausted because petitioner could return to state court and raise this claim in a second collateral motion under CPL 440.10.  While a state court *could* deny the claim on procedural grounds if petitioner raised it in yet another collateral motion, the court would not be required to do so.  <u>See</u> N.Y. Crim. Proc. Law § 440.10(3)(c) (emphasis added) ( "court *may* deny a motion to vacate a judgment when . . . [u]pon a previous motion made pursuant to this section, the defendant was in a position adequately to raise the ground or issue underlying the present argument but did not do so").  Thus, this Court "cannot say with certainty, under the circumstances presented here, that petitioner could not return to state court" and successfully exhaust this claim.  <u>Borcyk v. Lempke</u>, 727 F. Supp. 2d 189, 193 (W.D.N.Y. 2010) (quotation and citation omitted).

Petitioner has not filed a second 440.10 motion.  The instant petition is thus a "mixed petition," containing both exhausted  and unexhausted claims.  <u>See</u> <u>Rhines</u>, 544 U.S. at 271.  This Court may review and deny a mixed petition if the unexhausted claims are "plainly meritless."  <u>See</u> 28 U.S.C. § 2254(b)(2); <u>Rhines</u>, 544 U.S. at 277-78.  Here, a review of the record demonstrates that petitioner's unexhausted police/prosecutorial misconduct claim is plainly meritless.  Contrary to petitioner's assertion that police and prosecutorial misconduct undermined the voluntariness of his guilty plea, the record clearly demonstrates that his plea was obtained in accordance with due process.

A guilty plea is consistent with due process if it is done "voluntarily, knowingly and intelligently, with sufficient awareness of the relevant circumstances and likely consequences." <u>United States v. Adams</u>, 448 F.3d 492, 497 (2d Cir. 2006) (quoting <u>Bradshaw v. Stumpf</u>, 545 U.S. 175, 183 (2005)).  <u>See</u> <u>also</u> <u>Hill v. Lockhart</u>, 474 U.S.52, 56 (1985) ("The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and

intelligent choice among the alternative courses of action open to the defendant.").  "A plea is considered intelligent if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way, and it is considered voluntary if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally.  Indeed, a plea of guilty entered by one fully aware of the direct consequences of the plea is voluntary in a constitutional sense unless induced by threats, misrepresentations, or perhaps by promises that are by their nature improper."  Velasquez v. Ercole, 878 F. Supp.2d 387, 401 (E.D.N.Y. 2012) (quotations and citations omitted).  Further, where a defendant is represented by counsel at the plea, and enters the plea upon the advice of counsel, the voluntariness of the plea depends upon whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. See Lockhart, 474 U.S. at 56 (citations omitted).

Here, a review of the transcript of petitioner's plea allocution demonstrates that he was informed and aware of the consequences of his guilty plea.  There is no indication in the record that, at the time of his plea, petitioner was mentally incompetent or otherwise lacked the mental capacity required to enter into a guilty plea.  He acknowledged that he understood he was waiving his rights to remain silent, to trial by jury, to confront and cross-examine witnesses and to present witnesses on his own behalf.  Petitioner also acknowledged that he had sufficient time to discuss the matter with his attorney and that he was satisfied with the representation provided by counsel.  Indeed, there is no indication in the record that counsel's representation fell outside the range of competence demanded of attorneys in criminal cases.  Petitioner further acknowledged that no one had coerced him or forced him to plead guilty and that he was freely and voluntarily pleading guilty because he was, in fact, guilty.  In sum, petitioner's claim of

police/prosecutorial misconduct is belied by the record which demonstrates that petitioner's guilty plea was knowing, voluntary and intelligent. Accordingly, I conclude and respectfully recommend that there is no merit to petitioner's fifth claim for habeas relief.

> ### 2. *Claim Four*

Petitioner argues that he exhausted his fourth habeas claim (the informant *Brady* claim) by first presenting it in his CPL § 440.10 reply papers, wherein he stated:

> At no point do the People mention or disclose the fact that the main informant had a lengthy history of violence with me, and was obviously involved in these crimes. Even after I exhibited my knowledge of him, the People simply place[d] a shade over his identity and wrongfully claim[ed] him to be a "proven reliable informant." This is not to suggest that the prosecutors must disclose to the Court each and every statement or bit of evidence or the results of every avenue of investigation. Indeed, there are many situations where the prosecution can fairly keep to itself what it alone possesses. But where, as here, there is in the possession of the prosecution evidence of a material nature which if disclosed could affect the ultimate decision on a suppression motion, and that evidence is not disclosed, such non-disclosure denies me due process of law.

Exh. P, at 14. In the first instance, this argument appears to be framed slightly differently than petitioner's fourth habeas claim: the 440.10 argument alleges that the prosecution's failure to disclose information regarding the key informant negatively impacted the trial court's decision on petitioner's suppression motion; in his fourth habeas claim, petitioner alleges that disclosure of this information "undeniably would have changed my decision making of whether or not to accept a plea." Petition, at 17-18. Putting that discrepancy aside, it is well-settled that a claim raised for the first time only in a reply brief *to an appellate court* is not properly presented to the state courts for exhaustion purposes. See Lurie, 228 F.3d at 124. Here, although the claim at issue was raised on *collateral* review, there is no logical distinction: whether a petitioner challenges his conviction via direct or collateral review, the reviewing court cannot fairly be held to have been alerted to a claim that was not directly raised in petitioner's original submission and

was, instead, asserted only in response to an opposition. It thus appears that petitioner's fourth habeas claim is unexhausted. Assuming it is unexhausted, it cannot be "deemed" exhausted because–as discussed above–petitioner has remedies available in state court.

In any event, regardless of whether or not petitioner's fourth habeas claim is exhausted, it is "plainly meritless" and should be dismissed. See 28 U.S.C. § 2254(b)(2); Rhines, 544 U.S. at 277-78. For the same reasons that preclude relief on petitioner's third habeas claim, "petitioner's contention [in his fourth habeas claim] that he was unaware of material that either impeached his accusers or exculpated him could not be a basis for habeas relief." Tarafa v. Artus, No. 10 Civ. 3870, 2013 WL 245786, at *3 (S.D.N.Y. Jan. 23, 2013). See discussion, infra, at section IV.B.2. Accordingly, I conclude and respectfully recommend that petitioner's fourth habeas claim must be dismissed.

## IV. CONCLUSION

For the reasons set forth above, I conclude—and respectfully recommend that Your Honor should conclude—that the instant petition for a writ of habeas corpus should be denied in its entirety. Further, because reasonable jurists would not find it debatable that petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right, I recommend that no certificate of appealability be issued. See 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000).

Dated:    December 23, 2014            Respectfully Submitted,
          White Plains, New York

                                       _____
                                       PAUL E. DAVISON, U.S.M.J.

**NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days, plus an additional three (3) days, or a total

of seventeen (17) days, from service of this Report and Recommendation to serve and file

written objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  Such objections, if any, along with

any responses to the objections, shall be filed with the Clerk of the Court with extra copies

delivered to the chambers of the Hon. Kenneth M. Karas, at the Hon. Charles L. Brieant, Jr.

Federal Building and United States Courthouse, 300 Quarropas Street, White Plains, New York

10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later

appellate review of any order of judgment that will be entered.  See Caidor v. Onondaga County,

517 F.3d 601, 604 (2d Cir. 2008).

Requests for extensions of time to file objections must be made to Judge Karas.

Chambers has mailed a copy of this Report and Recommendation to:

Kahlil Gonzalez  #09-A-6167
Franklin Correctional Facility
62 Bare Hill Road
P.O. Box 10
Malone, New York 12953-0010